36 F.3d 1106
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Inez WILLIAMS, Vanessa Brewer, Gary Byers, individually and
on behalf of all similarly situated person,
Plaintiffs-Appellants,
and
KANSAS HOSPITAL ASSOCIATION, Bethany Medical Center,
Asbury-Salina Regional Medical Center and
Stormont-Vail Regional Medical Center, Plaintiffs,
v.
Donna L. WHITEMAN, in her official capacity as Secretary of
the Kansas Department of Social and Rehabilitation Services,
Donna E. Shalala, in her official capacity as Secretary of
The United States Department of Health and Human Services,
Bruce C. Vladeck, in his official capacity as Administrator
of the Health Care Financing, Administration, Defendants-Appellees.
KANSAS HOSPITAL ASSOCIATION, Bethany Medical Center,
Asbury-Salina Regional Medical Center and
Stormont-Vail Regional Medical Center,
Plaintiffs-Appellants,
and
Inez WILLIAMS, Vanessa Brewer, Gary Byers, individually and
on behalf of all similarly situated persons,
v.
Donna L. WHITEMAN, in her official capacity as Secretary of
the Kansas Department of Social and Rehabilitation Services,
Donna E. Shalala, in her official capacity as Secretary of
The United States Department of Health and Human Services,
Bruce C. Vladeck, in his official capacity as Administrator
of the Health Care Financing, Administration, Defendants-Appellees.
 Nos. 93-3365, 93-3369.
 United States Court of Appeals, Tenth Circuit.
 Sept. 16, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before ANDERSON and TACHA, Circuit Judges, and ROSZKOWSKI[2], District Judge.
 
 
 2
 Plaintiffs moved for a preliminary injunction preventing the state of Kansas from implementing an increase in the state's Medicaid co-payment requirement for inpatient hospital services. The district court denied the motion and plaintiffs now appeal. We exercise jurisdiction pursuant to 28 U.S.C. 1292(a)(1) and affirm.
 
 
 3
 Hospital plaintiffs, the Kansas Hospital Association and several individual hospitals, and individual plaintiffs, Inez Williams, Vanessa Brewer and Gary Byers, brought suit in district court challenging a 1993 amendment to Kan. Admin. Regs. 30-5-71(a)(1) that increased the state Medicaid co-payment requirement for inpatient hospital services from $25 to $325 per admission. Plaintiffs contend that the amendment violates both the federal Medicaid statute and applicable federal Medicaid regulations. The Medicaid statute provides that any state cost-sharing provisions (such as co-payment requirements) must be "nominal in amount" as determined by the Secretary of Health and Human Services ("HHS"). 42 U.S.C. 1396o(a)(3). HHS regulations establish that co-payments for institutional services may not exceed fifty percent of the cost of the first day of care in the institution. 42 C.F.R. 447.54(c).
 
 
 4
 Initially, the district court granted a temporary restraining order preventing the Kansas Department of Social and Rehabilitation Services ("SRS") from implementing the co-payment increase. Subsequently, however, the district court denied plaintiffs' motion for a preliminary injunction and dissolved the temporary restraining order, allowing the increase to go into effect. Kansas Hosp. Ass'n v. Whiteman, 835 F.Supp. 1556 (D. Kan.1993) (Whiteman I ). We will reverse a district court's determination with respect to a preliminary injunction only if the court "abuses its discretion, commits an error of law, or is clearly erroneous in its preliminary factual findings." Autoskill, Inc. v. National Educ. Support Sys., Inc., 994 F.2d 1476, 1487 (10th Cir.) (internal quotations omitted), cert. denied, 114 S.Ct. 307 (1993).
 
 
 5
 The district court correctly identified the four requirements for the grant of a preliminary injunction. These are:
 
 
 6
 (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.
 
 
 7
 Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir.1986); see also Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Servs., No. 93-3182, 1994 WL 407223, at * 5 (10th Cir. Aug. 4, 1994). The district court held that these requirements weighed against granting a preliminary injunction in this case. Because all the requirements must be met to justify a preliminary injunction, we find that we need discuss only the first three in affirming the district court's determination.
 
 
 8
 We largely accept the district court's analysis on the issue of irreparable harm. See Whiteman I, 835 F.Supp. at 1562-64. While the court found that there was at least some potential for irreparable harm to plaintiffs due to the co-payment increase, it did not find that there was a strong showing of such harm. The court found that any nonmonetary damage to individual plaintiffs[3] as a result of the increased co-payment, such as foregoing necessary medical care, is merely speculative on the information available.
 
 
 9
 The potential monetary damage to both individual and hospital plaintiffs is also somewhat speculative, though there would be at least some monetary damage. Under the co-payment amendment some Medicaid patients will undoubtedly pay up to $325 instead of the previous $25. Further, hospitals, due to the inability of some (even many) Medicaid recipients to meet the new co-payment, will be forced to make up the difference. Were the co-payment requirement eventually to be struck down on the merits, any additional funds spent by individual or hospital plaintiffs while the co-payment was in force would not be recoverable due to the state's Eleventh Amendment immunity. Thus, both individual and hospital plaintiffs would suffer at least some "irreparable harm." See Kansas Health Care Ass'n, 1994 WL 407223, at * 6 (pointing out that Eleventh Amendment immunity can render monetary harm "irreparable"). However, with respect to hospital plaintiffs, the district court pointed out that some of the potential monetary loss may be recouped through collection efforts and by passing through additional costs to other patients. Moreover, the amount of money potentially at stake is very small relative to the revenues of individual hospitals and the Kansas hospital industry as a whole. With respect to individual plaintiffs, because hospitals cannot refuse to treat patients who cannot afford the co-payment, it is likely that Medicaid patients who would be most injured by the new co-payment will not be forced to pay it, at least in the short term. All of these findings by the district court with respect to irreparable harm constitute factual findings which we will not disturb.
 
 
 10
 Against this relatively weak showing of irreparable harm, we must balance the potential harm to defendants from the grant of a preliminary injunction. See Tri-State Generation, 805 F.2d at 355. The district court found that the greater harm lies in a potentially improper grant of a preliminary injunction than in declining to grant an injunction.
 
 
 11
 Again, we largely accept the district court's analysis, consisting primarily of factual findings. See Whiteman I, 835 F.Supp. at 1564-65. The court found that the impact of a preliminary injunction on the state budget would be certain and immediate. Due to budgetary constraints established by the Kansas legislature, other reductions in the SRS budget would likely have to be found resulting in cuts to other programs. The district court did not clearly err in finding that the balance of harms weighs against granting a preliminary injunction.
 
 
 12
 We address the third inquiry under the preliminary injunction analysis--whether the injunction, if issued, would be adverse to the public interest--because it ties in to the second. As the district court pointed out, we must consider two distinct Congressional goals in this case. See id. at 1566. First, Congress has tried to ensure that cost sharing mechanisms will not prevent Medicaid recipients from receiving the care they need. 42 U.S.C. 1396o(a)(3). At the same time, Congress has made clear that cost sharing mechanisms are important to the Medicaid system and has increasingly allowed for such mechanisms in recent years. See Whiteman I, 835 F.2d at 1566 (reviewing some of the history of Medicaid cost sharing mechanisms). It is this second goal that is potentially hurt by a preliminary injunction in this case.[4] We agree with the district court's finding that, because the potential effect on access to care from failure to grant a preliminary injunction is speculative at this stage, the more direct injury to the policy of cost sharing makes the granting of a preliminary injunction adverse to the public interest.
 
 
 13
 Because we find that the district court did not clearly err in holding that the balance of harms weighs against granting a preliminary injunction and that granting such an injunction would be adverse to the public interest, we need not undertake a detailed analysis of whether plaintiffs are likely to succeed on the merits. Such an analysis is best left to full adjudication, which proceeds as we write.[5] The district court did not abuse its discretion in denying plaintiffs a preliminary injunction.
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The Honorable Stanley J. Roszkowski, Senior District Judge, United States District Court for the Northern District of Illinois, sitting by designation
 
 
 [3]
 In light of the fact that the district court recently certified the original individual plaintiffs as representatives of the class of Medicaid recipients, we conduct our analysis here based on the effects of the co-payment requirement on individual Medicaid recipients in general
 
 
 [4]
 Obviously, if a preliminary injunction serves merely to enforce the law, it is clearly in the public interest. This, however, is exactly the question which we do not address at the preliminary stage of this case
 
 
 [5]
 We decline to address the various motions to supplement the record submitted by the parties. These motions concern statements by the Health Care Financing Administration regarding the substantive validity of the Kansas co-payment regulation. Because we do not reach the merits of that question here, the motions are moot