**Willie C. BROWN, Plaintiff,**

v.

**John J. CALLAHAN, Ph.D.,[1] Acting Commissioner of Social Security, Defendant.**

Civil Action No. 97–4068–DES.

United States District Court, D. Kansas.

Sept. 4, 1997.

---

**1.** President Clinton appointed John J. Callahan, Ph.D., to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan, Ph.D., should be substituted for Shirley S. Chater as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1358

Juliann Johnson, Legal Intern. of Washburn Clinic, Lynette F. Petty, Jack C. Morgan, III, Washburn Law Clinic, Washburn University, Topeka, KS, for Plaintiff.

D. Brad Bailey, Asst. U.S. Atty., Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

### I. INTRODUCTION

This matter is before the court on defendant's Motion to Dismiss (Doc. 18) and plain-

tiff's Motion for Temporary Restraining Order, Preliminary Injunction, Expedited Hearing and Waiver of Security (Doc. 4).

## II. PROCEDURAL BACKGROUND

On January 22, 1990, and January 31, 1990, respectively, Willie Brown filed concurrent applications for Title XVI Supplemental Security Income (SSI) and Title II disability benefits. Mr. Brown alleged an onset of disability in February 1987 due to back problems, diabetes, and depression. Mr. Brown's 1990 applications were denied at the initial level on May 16, 1990, and upon a reconsideration on August 8, 1990. Mr. Brown did not appeal the denial any further at that time.

Mr. Brown filed another application for SSI disability payments and Title II disability insurance (SSDI) on June 6, 1991, adding memory loss and substance abuse to his list of disabling impairments. Mr. Brown's 1991 applications were initially denied, but, upon reconsideration, the Social Security Administration (SSA) approved Mr. Brown's SSI claim on April 7, 1992. However, SSA denied the Title II (SSDI) application because the evidence did not support a finding of disability prior to plaintiff's date last insured for disability insurance purposes, which was December 31, 1989.

Mr. Brown sought review of the adverse determination on his 1991 application for SSDI at an administrative hearing on March 24, 1993. On April 28, 1993, the Administrative Law Judge (ALJ) issued a decision denying the 1991 claim for Title II benefits, finding that the evidence did not support a finding of disability prior to the plaintiff's date last insured for disability insurance purposes. Furthermore, the ALJ denied Mr. Brown's request to reopen the 1990 claims for benefits.

On June 2, 1993, Mr. Brown requested review of the April 28, 1993, decision. The Appeals Council rejected Mr. Brown's request to reopen the unfavorable Title II (SSDI) determination on his 1990 application and found that the ALJ should have dismissed Mr. Brown's hearing request on his 1991 application on the basis of *res judicata.*

On December 30, 1993, Mr. Brown filed a complaint in federal district court. The court ordered the matter remanded on July 27, 1994, for further consideration of Mr. Brown's mental capacity to pursue his administrative remedies in 1990.

On August 9, 1994, the Appeals Council remanded the claim to an ALJ for a supplemental hearing. The ALJ held the supplemental hearing on December 7, 1994. On March 24, 1995, SSA sent a Notice of Overpayment to Mr. Brown's representative payee in connection with the SSI benefits that he had been awarded on April 7, 1992, because Mr. Brown had not reported wages that he had earned "shooting grades" until he submitted a report for the supplemental hearing on his SSDI application.

The ALJ issued his decision on May 26, 1995, finding that Mr. Brown had demonstrated good cause for failing to pursue his administrative remedies in 1990. As a result, the ALJ reopened Mr. Brown's 1990 applications for SSI and SSDI. Although the ALJ considered the wages Mr. Brown earned for "shooting grades," the ALJ found that Mr. Brown had not engaged in substantial gainful activity at any time since February 10, 1987. As a result, the ALJ issued a fully favorable decision on Mr. Brown's 1990 SSDI claim.

However, the ALJ did not specifically state in his decision that he had considered Mr. Brown's wages for "shooting grades" when he found that Mr. Brown had not engaged in substantial gainful activity. Therefore, on June 7, 1995, a claims examiner determined that further review of Mr. Brown's claim was necessary because it did not appear that the ALJ's decision had addressed Mr. Brown's work activity.

On June 27, 1995, Mr. Brown's counsel requested reconsideration of the Notice of Overpayment sent to Mr. Brown's representative payee in March. On June 29, 1995, SSA sent Mr. Brown a Notice of Continuing Disability Review, which indicated that SSA was trying to determine if Mr. Brown could continue to receive SSDI checks even though he had earned wages for "shooting grades" for a construction company, the same wages which were considered by the ALJ in his May 26, 1995, decision. On July 25, 1995, SSA sent Mr. Brown a notice regarding the recomputation of the SSI benefits he had been awarded in April of 1992. In that

notice, Mr. Brown was informed that his SSI payments would be reduced so that SSA could reprover what Mr. Brown was overpaid during the period of time that he earned wages for "shooting grades." Mr. Brown was also notified that he would need to seek treatment for his drug addiction or face termination of his SSI benefits and that his SSI payments would be limited to 36 months beginning with March 1995.

On August 23, 1995, SSA sent Mr. Brown a Notice of Planned Action with regard to his SSI award. The notice stated that Mr. Brown's SSI payments would be reduced beginning in October 1995 because he had been overpaid.

On August 31, 1995, Mr. Brown's counsel informed SSA that Mr. Brown's employer had provided inconsistent wage information for Mr. Brown. On September 27, 1995, Mr. Brown's claims representative documented conversations she had with Mr. Brown's employer in order to try to clear up the issue regarding Mr. Brown's wages. In these conversations, Mr. Brown's employer claimed that Mr. Brown had worked regularly from the beginning of 1995 and that Mr. Brown had asked his employer not to count wages for him and to pay him in cash so that Mr. Brown could continue receiving his social security payments.

On December 8, 1995, SSA sent Mr. Brown a Notice of Planned Action informing him that his SSI payments would be terminated because he was no longer eligible for SSI based upon his income. On February 27, 1996, Mr. Brown's claim was identified as a potential fraud claim and it was recommended that no further SSI payments be made until the investigation was completed. On April 5, 1996, the District Office was asked to develop information regarding Mr. Brown's work activity since 1993 for the fraud investigation.

In August 1996, the District Office received notice that Mr. Brown had not been located for the purposes of the statutory drug abuse treatment. As a result, Mr. Brown's SSDI payments were also suspended and his last check was issued in September 1996. Mr. Brown filed for review of the drug abuse and alcoholism suspension when he did not receive a payment in October. On October 9, 1996, Mr. Brown's counsel sent SSA a letter indicating that she thought the overpayment issue had been resolved and again requesting reconsideration and waiver of overpayment.

On October 25, 1996, SSA sent Mr. Brown a Notice of Proposed Action regarding his SSDI benefits. In this notice, SSA stated that his disability had ended in February 1994 as a result of substantial work activity. The notice also stated that Mr. Brown would be entitled to a nine month trial work period and a thirty-six month extended period of eligibility. However, SSA did not resume Mr. Brown's payments and did not extend his period of eligibility.

## III. FACTUAL BACKGROUND

Mr. Brown is a fifty-five year old veteran who worked in heavy, unskilled labor as a cement finisher from 1969 to February 10, 1987, when he was injured in a fall at a construction site.

Since SSA terminated Mr. Brown's benefits in October 1996, he has been unable to afford his anti-depression, asthma, and pain medications. He also cannot afford transportation fare, so he often misses appointments with his doctors and his legal intern. He has become severely depressed and has continuous thoughts of committing suicide. As a result, he has begun consulting with a suicide counselor. He is under a great deal of stress and the smallest of noises irritates him.

Although his representative payee, Sheila Ellsworth, allows Mr. Brown to live with her, Mr. Brown is unable to financially assist with rent payments, utilities, food, or other bills. Ms. Ellsworth has children and other dependents, and it has caused her financial strain to continue to provide for Mr. Brown. Mr. Brown realizes this and often leaves for days at a time to relieve some of the stress, during which time he wanders from place to place.

Mr. Brown lived with his brother briefly, but that strained his brother's marriage. As a result, his brother recently divorced his wife and moved to California, leaving Mr. Brown with no familial support. Mr. Brown cannot afford shoes, clothes, and other basic

necessities. In February of this year, he began receiving food stamps to avoid starvation.

## IV. MOTION TO DISMISS

██ The defendant has submitted a Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Pursuant to Rule 12(b)(1), the defendant first claims that the court lacks jurisdiction over the subject matter of this case because the Commissioner of Social Security has not made a final decision regarding Mr. Brown's SSDI claim as required under 42 U.S.C. § 405(g). The court disagrees with this argument. Mr. Brown received a fully favorable decision from the ALJ which not only made him eligible to receive SSDI but also granted him back SSDI payments. While Mr. Brown may not have a final decision regarding issues raised after the ALJ's decision, he does have a final decision regarding the back SSDI payments pursuant to 42 U.S.C. § 405(g) and (h). Therefore, the court finds that it does have jurisdiction of the subject matter of this claim, at least with respect to the back SSDI payments.

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the court must look at the facts of the case in the light most favorable to the non-moving party and a dismissal is appropriate "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir.1997), *petition for cert. filed,* —— U.S. ——, 118 S.Ct. 55, —— L.E.2d —— (1997). Because the court finds that this is not a situation where the plaintiff can prove no set of facts in support of his claim and that the court has subject matter jurisdiction of this claim, the court denies the defendant's Motion to Dismiss (Doc. 18).

## V. PRELIMINARY INJUNCTION

██ "The issuance of a temporary restraining order or other preliminary injunctive relief is within the sound discretion of the district court." *Kansas Hospital Association v. Whiteman,* 835 F.Supp. 1548, 1551 (D.Kan.1993). In order to obtain a preliminary injunction, Mr. Brown must show: "(1)

a substantial likelihood of prevailing on the merits; (2) irreparable harm in the absence of the injunction; (3) proof that the threatened harm outweighs any damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest." *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Services,* 31 F.3d 1536, 1542 (10th Cir.1994).

### A. Substantial Likelihood of Prevailing on the Merits

██ The first element Mr. Brown must show in order to obtain a preliminary injunction is that he has a substantial likelihood of prevailing on the merits. *Id.* In this action, Mr. Brown is seeking a preliminary injunction only to require SSA to make payments on the back SSDI benefits that he was awarded by the ALJ's decision. Although Mr. Brown contests SSA's actions by terminating his SSDI benefits rather than counting time that he had worked toward a trial work period and extended eligibility period, Mr. Brown does not seek a preliminary injunction to compel SSA to make current SSDI payments. Since Mr. Brown is only seeking the preliminary injunction in order to receive payments on the back benefits, the court finds that Mr. Brown only has to show a substantial likelihood of prevailing on the merits with respect to the back benefits awarded by the ALJ.

With regard to Mr. Brown's back benefits, no evidence has been presented to the court to show that Mr. Brown should not be paid his back SSDI benefits through 1992 because there is no evidence that he worked during that period of time. Furthermore, the court finds that there is no evidence to show that the AL's decision regarding Mr. Brown's work activity for 1993 should be reopened. The transcript of the December 1994 hearing clearly demonstrates that the ALJ considered not only Mr. Brown's total earnings for 1993 but also the nature and extent of the work activity in which Mr. Brown had engaged. SSA's claim that Mr. Brown's 1993 award may have been fraudulently induced appears to be without merit. There was no evidence presented to suggest that Mr.

Brown earned any more money in 1993 than he claimed for his income taxes, the amount which was considered by the ALJ. In fact, the "new evidence" obtained by SSA from Mr. Brown's employer indicates that Mr. Brown earned about $2,700 less for 1993 than the amount considered by the ALJ. This is insufficient to justify reopening the AL's decision as to the 1993 award. *See* 20 C.F.R. § 404.989 (1997) (defining what constitutes good cause to reopen a decision). Thus, there is a substantial likelihood that Mr. Brown will prevail on the merits of his claim for back benefits, at least through 1993.

■ Because of the conflicting evidence regarding Mr. Brown's 1994 and 1995 wages, which SSA obtained after the December 1994 hearing, the court cannot determine whether there is a substantial likelihood that Mr. Brown would prevail on the merits for the 1994 and 1995 SSDI benefits. As a result, the court finds that it must remand this case to SSA for the following determinations to be made: (1) the total amount of wages Mr. Brown earned for 1994 and for 1995; (2) whether Mr. Brown was engaged in substantial gainful activity in 1994 and 1995; and (3) whether Mr. Brown engaged in fraudulent conduct to obtain SSDI benefits for 1994 and 1995. Given the conflicting information submitted by his employer to date, Mr. Brown's total wages might be more easily determined based upon what Mr. Brown reported to the IRS for income tax purposes.

### B. Irreparable Harm in the Absence of the Injunction

Secondly, Mr. Brown must show that he would suffer irreparable harm in the absence of the injunction. *Kansas Health Care Ass'n, Inc.,* 31 F.3d at 1542. Mr. Brown has demonstrated that he is in dire need of financial assistance. Mr. Brown is currently living with his social security representative payee, even though he is unable to assist with the costs of shelter and food. He is unable to afford his anti-depression, asthma, and pain medicine. In addition, he has missed doctor appointments because he is unable to pay the transportation fare. Furthermore, Mr. Brown started receiving food stamps in February 1997 in order to avoid starvation. The court finds that Mr. Brown has clearly shown irreparable harm in the absence of the injunction.

### C. Proof that the Threatened Harm Outweighs Any Damage the Injunction May Cause to the Party Opposing It

For the third element, Mr. Brown must show that the balancing of the harms to each party weighs in his favor. *See United States v. Theos,* 709 F.Supp. 1007, 1011 (D.Colo. 1989). In this case, the harm to SSA would be negligible because the preliminary injunction would only require SSA to pay the back SSDI amounts that its own ALJ had already awarded Mr. Brown. The preliminary injunction would not require SSA to make payments on the benefits for 1994 and 1995, which are currently in dispute. On the other hand, Mr. Brown is currently unable to provide for his basic needs, as discussed above. Therefore, the court finds that Mr. Brown has shown that the threatened harm to him outweighs the damage the injunction may cause SSA.

### D. The Injunction, If Issued, Will Not Be Adverse to the Public Interest

Finally, Mr. Brown must show that the preliminary injunction would not be adverse to the public interest. *Kansas Hospital Ass'n v. Whiteman,* 835 F.Supp. 1556, 1565 (D.Kan.1993), *aff'd by Williams v. Whiteman,* 36 F.3d 1106 (10th Cir.1994). In this case, the preliminary injunction would be limited to require SSA only to pay Mr. Brown the back SSDI benefits through 1993 that had already been awarded to him by the ALJ. Furthermore, the ALJ's decision was final and SSA has not obtained new evidence which would justify reopening the decision relating to the award of benefits through 1993. Therefore, SSA would only be required to enforce its own decision. The court finds that Mr. Brown has shown that the issuance of this preliminary injunction would not be adverse to the public interest.

### VI. WAIVER OF SECURITY REQUIREMENT

■ Mr. Brown requests that the court waive the security requirement found in Rule

65(c) of the Federal Rules of Civil Procedure. The purpose of the security requirement is to ensure that the defendant will be compensated for any damages that the defendant may suffer as a result of a wrongfully issued injunction. Fed.R.Civ.P. 65(c). However, "the trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir.1964).

In this case, Mr. Brown has shown that there is not a likelihood of harm to the defendant, especially given the limited scope of the preliminary injunction. Furthermore, Mr. Brown has been granted permission to proceed *in forma pauperis* in this action, and the court presumes that Mr. Brown would be unable to provide security to protect the defendant from damages stemming from a wrongfully issued preliminary injunction. *See Bass v. Richardson*, 338 F.Supp. 478, 490 (S.D.N.Y.1971) ("It is clear to us that indigents, suing individually or as class plaintiffs, ordinarily should not be required to post a bond under Rule 65(c)"). Therefore, the court grants Mr. Brown's motion to waive the security requirement for the preliminary injunction.

## VII.   CONCLUSION

The parties have raised several other issues in the various pleadings that have been submitted to the court. Among these are the following: (1) the possibility that Mr. Brown committed fraud by failing to report all of his earnings for 1994 and 1995, (2) whether Mr. Brown engaged in substantial gainful activity in 1994 and 1995, (3) SSA's failure to respond to Mr. Brown's Requests for Reconsideration and Waiver of Overpayment, (4) SSA's failure to allow Mr. Brown a trial work period and extended period of eligibility, and (5) wrongful termination of Mr. Brown's current SSDI benefits. Although the court is reluctant to once more remand this case to the defendant for further proceedings given the protracted administrative proceedings Mr. Brown has already endured, the court finds that these issues must be resolved at the administrative level before they are properly before the court. *See Franks v. Nimmo*, 683 F.2d 1290, 1295 (10th Cir.1982)("Intervention

by the courts preceding exhaustion of available administrative remedies should be exercised only under circumstances where the facts clearly establish that fundamental rights and interests of the private party are being harmed and cannot be adequately redressed by permitting the administrative process to pursue its course").

**IT IS THEREFORE BY THE COURT ORDERED** that the defendant's Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 18) is denied.

**IT IS FURTHER ORDERED** that the plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, Waiver of Security, and Expedited Hearing (Doc. 4) is granted in part and denied in part. Plaintiff's motion for preliminary injunction is granted in part, requiring SSA to pay plaintiff's back SSDI benefits through 1993. As to the benefits from 1994 though 1997, plaintiff's motion for preliminary injunction is denied. Plaintiff's motion for waiver of security is granted. Plaintiff's motion for expedited hearing on this motion is denied. The remaining issues in this case are remanded for further proceedings in accordance with this order.