STATE OF NORTH CAROLINA, DE-PARTMENT OF HUMAN RE-SOURCES, DIVISION OF MEDICAL ASSISTANCE, Petitioner,

v.

The UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVIC-ES, Health Care Financing Administration, Respondents.

No. 92–1766.

United States Court of Appeals, Fourth Circuit.

Argued April 1, 1993.

Decided July 16, 1993.

Gayl M. Manthei, Sp. Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, NC, argued (Lacy H. Thornburg, Atty. Gen., on brief), for petitioner.

David VanBuren Peery, Office of Gen. Counsel, U.S. Dept. of Health and Human Services, Baltimore, MD, argued (Stuart M. Gerson, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, DC, on brief), for respondent.

Before POWELL, Associate Justice (Retired), United States Supreme Court (sitting by designation), and HALL and NIEMEYER, Circuit Judges.

## OPINION

POWELL, Associate Justice:

The North Carolina Department of Human Resources petitions for review of the final decision of the Administrator of the Health Care Financing Administration (HCFA) rejecting retroactive application of proposed changes in North Carolina's Medicaid program. We affirm.

## I.

The State of North Carolina participates in the Medicaid program, under which the federal government reimburses a portion of the costs for providing medical services to eligible individuals. Participation in the Medicaid program is voluntary, but a decision to participate requires a State to comply with federal statutory requirements. *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). The federal statutes governing the Medicaid program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (1991), require each State to submit to the HCFA a plan describing how the State intends to administer its program to ensure compliance with the federal regulations.[1] 42 U.S.C. § 1396a. Each State's Medicaid plan must specify, inter alia, the type and scope of Medicaid services that are available, and the payment levels for those services. 42 C.F.R. § 430.0 (1992). Subsequent amendments to the state plan must be submitted to the HCFA for approval. 42 C.F.R. § 430.12(c)(ii).

The dispute in this case centers around federal regulations requiring a State to publish prior notice of certain types of proposed changes to its Medicaid plan. If an amendment proposes a "significant change in [the state's] methods and standards for setting payment rates and services," the amendment cannot take effect until after the state has published notice of the change. 42 C.F.R. §§ 447.205(a), (d), 447.253(h).

On June 28, 1990, North Carolina submitted to the HCFA an amendment of its state plan, designated as "SPA 90–14," which proposed certain changes in North Carolina's

---

1. HCFA is an agency within the Department of Health and Human Services (HHS). The Secretary of HHS has delegated authority to the Administrator of HCFA to review and approve Medicaid state plan amendments. The decision of the HCFA Administrator with respect to a particular Medicaid state plan amendment constitutes a final agency decision, which is entitled to full deference by a reviewing court unless it is not supported by substantial evidence. 42 U.S.C. § 1316(a)(4) (1991).

Medicaid payment methodology. The portion of SPA 90–14 at issue here proposed to exclude state-operated nursing facilities from a limitation previously applicable to all nursing homes located within the state known as the "80th percentile prospective direct care payment limitation." SPA 90–14 specified a retroactive effective date of April 1, 1990, for the exclusion of state-operated nursing facilities from the 80th percentile cap. North Carolina published notice of SPA 90–14's proposed changes on October 31, 1990.[2]

The HCFA Administrator, by letter dated March 26, 1991, approved the substance of the plan amendments proposed in SPA 90–14. The Administrator denied, however, North Carolina's request to have the exclusion from the 80th percentile limitation for state-operated facilities effective as of April 1, 1990. The Administrator reasoned that the proposed change to the 80th percentile limitation involved a significant change in the methods or standards of setting payment rates under North Carolina's state plan which could not become effective until after the publication of notice. The Administrator approved the amendment effective November 1, 1990, because the state complied with the public notice requirements of the regulations on October 31, 1990.

Pursuant to 42 U.S.C. § 1316(a)(2), 42 C.F.R. § 430.18, North Carolina petitioned HCFA to reconsider its denial of the effective date of April 1, 1990 for SPA–90–14. North Carolina argued that HCFA's rejection of SPA 90–14 from April 1, 1990, to November 1, 1990, was improper because the amendment did not effect a significant change in the state's methods or standards of setting Medicaid payment rates within the meaning of 42 C.F.R. § 447.253(h). Specifically, North Carolina argued that SPA 90–14 was not a significant amendment to the state's Medicaid plan because it affected only four state-operated nursing homes, and involved less than one percent of the State's total Medicaid expenditures.

Following a full administrative hearing, the hearing officer issued a recommended decision rejecting the State's arguments and affirming the decision of the Administrator. The hearing officer noted that North Carolina's arguments relied primarily on an obsolete regulation which had previously imposed a test of one percent change in a State's Medicaid expenditures to determine when a change was significant. Finding that the current regulations permitted "HCFA to determine what is and what is not 'significant' after considering all of the facts in a given case," Jt.App. 21–22, the hearing officer concluded that SPA–90–14 constituted a significant change in the state plan within the meaning of the applicable regulations.

North Carolina's exceptions to the hearing officer's recommended decision were rejected on April 27, 1992, when the Acting HCFA Administrator adopted as the final agency decision the hearing officer's recommendations. The Administrator determined that while the proposal to exempt state-operated nursing facilities from the 80th percentile cap directly affected only four state-owned facilities, SPA 90–14 specifically excluded from the new methodology a large number of Medicaid recipients in private facilities. The Administrator concluded that the impact on these groups alone would constitute a significant change within the meaning of section 447.253. The Administrator also noted that the proposed change would result in increased payments of $3.5 million to state-operated nursing homes which was a significant proportional increase in payments to the respective state-operated facilities and therefore a significant change as contemplated by the regulations. North Carolina was dissatisfied with the HCFA's final agency decision, and filed this action for judicial review pursuant to 42 U.S.C. § 1316(a)(3).

## II.

The question presented is whether the HCFA correctly concluded that SPA 90–14 was a significant amendment to North Carolina's Medicaid plan that triggered the State's obligation to comply with the public notice requirements mandated by the federal

---

**2.** SPA 90–14 also proposed to replace the prospective payment methodology previously used to calculate Medicaid rates for state-operated facilities with a cost-based payment methodology effective November 1, 1990. That portion of SPA 90–14 is not at issue in this appeal.

regulations. 42 C.F.R. §§ 447.205, 447.-253(h). The HCFA's interpretation of its own regulations deserves considerable deference, and we will not set it aside unless it is an abuse of discretion or otherwise not in accordance with the law. *Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982); *Missouri Dep't of Social Servs. v. Sullivan,* 957 F.2d 542, 544 (8th Cir.1992). Whether or not SPA 90–14 proposed a significant change in North Carolina's Medicaid plan is a question of fact, and we are required by statute to accept the HCFA's factual determinations if supported by substantial evidence. 42 U.S.C. § 1316(a)(4). Substantial evidence may be something less than the weight of the evidence. The possibility of drawing two inconsistent conclusions from the evidence does not mean that the agency's determination was not supported by substantial evidence. *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966). Where, as here, an agency is simply interpreting its own regulation in light of a particular case, "[a] reviewing court must defer to an agency's decision if the agency has made a reasonable interpretation of its own regulation." *McHenry v. Bond,* 668 F.2d 1185, 1195 (11th Cir.1982).

■ North Carolina contests HCFA's determination that SPA 90–14 constitutes a "significant" change to the state's Medicaid plan. North Carolina relies on the former version of the regulations which required public notice only for changes that were expected to alter Medicaid payments by one per cent or more under a state plan. 42 C.F.R. § 447.205(a) (1981). North Carolina contends that no amendment should be considered "significant" under the new regulations unless it would have been considered significant under the repealed one per cent threshold test. To support its position, North Carolina points out that the regulations were amended to provide states greater flexibility in administering their state plans. *See* 46 Fed.Reg. 47,967 (Sept. 30, 1981).

The Fifth Circuit Court of Appeals has adopted the position North Carolina urges here in a similar case to the one at bar. *See Mississippi Hosp. Ass'n v. Heckler,* 701 F.2d

511, 522 (5th Cir.1983); *see also California Ass'n of Bioanalysts v. Rank,* 577 F.Supp. 1342 (C.D.Cal.1983). In *Mississippi Hospital,* the Fifth Circuit determined that Mississippi's plan amendment eliminating reimbursement for legal fees incurred in challenges to Medicaid policies was not a significant change to the State's Medicaid payment methodology requiring advance public notice before the change could become effective. *Mississippi Hospital,* 701 F.2d at 522–23. The Fifth Circuit reasoned:

> [s]ince the amendment would not have required public notice under the former regulations, and since the present regulation was adopted to reduce the administrative burdens placed on state Medicaid agencies and give them greater flexibility in changing their reimbursement schemes, we do not read the current regulation to require public notice. *Id.* at 523.

We do not quarrel with the proposition that the regulations were amended to give states greater flexibility in amending their state Medicaid plans. But that proposition does not compel a conclusion that a plan amendment cannot be considered significant unless it surpasses the one per cent threshold standard enunciated in the repealed regulations. HCFA has declined to adopt this construction of its own regulations, and we will not force the agency to change its position absent evidence that the agency's interpretation is arbitrary or otherwise not in accordance with the law.

Based upon a full review of the record and the applicable regulations, we conclude that the HCFA's determination here was reasonable. The current regulations were amended to delete reliance on a Medicaid expenditure threshold for the purpose of determining whether a proposed change is significant. One rationale behind the amendment to the notice regulations can be found in the preamble to the revised rule:

> [w]e do not believe that it is necessary to set an explicit expenditure threshold above which public notice required ... doing so may deprive affected providers of an opportunity for public comment. For example, a State may make major changes in its methods and standards that may affect a

significant portion of providers but still not result in an increase or decrease of 1 percent. We believe that a requirement for all significant changes to be published will be more effective in guaranteeing public notice of all major changes in methods and standards for setting payment rates. 48 Fed.Reg. 56046, 56050 (Dec. 19, 1983).

One purpose of the amendment may have been to provide greater flexibility to the states in administering their Medicaid plans, but the above quoted passage indicates that the expenditure threshold standard was discarded because it was perceived to be an inaccurate measure of the significance of a plan amendment. For this reason, we decline to adopt a per se rule that no amendment should be considered significant under the new regulations unless it could have been considered significant under the old version of the regulations. While the percentage change in total reimbursements is a factor which may bear on the significance of a plan amendment, the one per cent standard is not determinative. *See Missouri Dep't of Social Servs. v. Sullivan,* 957 F.2d 542 (8th Cir. 1992); *Wisconsin Hosp. Ass'n v. Reivitz,* 820 F.2d 863 (7th Cir.1987).

The Administrator concluded that even though SPA 90–14 affects less than one percent of North Carolina's Medicaid expenditures, the amendment constituted a significant change in North Carolina's Medicaid plan. We have no difficulty concluding that HCFA's determination is supported by substantial evidence. It is true that only four state-owned facilities are impacted directly by SPA 90–14, but the amendment would increase payments to. these facilities by $3.5 million during the relevant time period. Moreover, the amendment benefits all state-operated facilities and excludes an entire class of privately-owned nursing home facilities from receiving similar treatment. Based on these factors, it was reasonable for the HCFA to conclude that SPA 90–14 constituted a significant change in North Carolina's Medicaid plan.

North Carolina maintains that even if the amendment did constitute a significant change under the applicable regulations, the State's failure to give public notice of the amendment should be considered harmless error. North Carolina supports its position with several observations. First, the State notes that not a single person commented on SPA 90–14 after it was publicly noticed. Second, North Carolina argues that because SPA 90–14 affected only state-operated facilities, knowledge of the proposed change on the part of those facilities might be presumed. Finally, North Carolina maintains that because SPA 90–14 increased rather than decreased reimbursement payments, the affected facilities and their patients were not likely to object to the amendments.

■ Nothing in the federal regulations permits a harmless error exception to the requirement that a State publish advance public notice of significant changes to a State's Medicaid rate setting methodology. We reject North Carolina's invitation to read a harmless error exception into the federal regulations mandating public notice. Much of the State's argument is an indirect attack on the HCFA's determination that SPA 90–14 was a significant amendment to the state plan because it excluded similarly situated private facilities and patients from its benefits granted to state-operated facilities. North Carolina's argument is essentially that SPA 90–14 was not a significant enough amendment to warrant strict compliance with the federal regulations. We cannot accept North Carolina's harmless error analysis without undercutting the Administrator's determination that SPA 90–14 did in fact effectuate a significant change in North Carolina's Medicaid plan.

The public notice requirements mandated by 42 C.F.R. §§ 447.205 and 447.253(h) are not burdensome and provide important procedural protections to providers and beneficiaries under the Medicaid program. They provide a reasonable method for ensuring that rate changes are equitable and conform to statutory mandates, regardless of whether comments are received on the notice. Because we affirm the HCFA's determination that SPA 90–14 constituted a significant amendment to North Carolina's Medicaid plan, we will not excuse as harmless North Carolina's failure to comply with the public notice requirements.

Accordingly, the decision of the HCFA is *AFFIRMED*.