**RITE AID OF PENNSYLVANIA, INC.**

v.

**Feather O. HOUSTOUN.**

No. Civ.A. 97–2120.

United States District Court,
E.D. Pennsylvania.

Nov. 3, 1997.

David R. Overstreet, Raymond P. Pepe, Carl C. Risch, Kirkpatrick & Lockhart, Harrisburg, PA, for Plaintiff.

Mary C. Walsh, Office of Legal Counsel, Philadelphia, PA, Doris M. Leisch, Pa. Dept. of Public Welfare, Philadelphia, PA, for Defendant.

### *MEMORANDUM*

BARTLE, District Judge.

Rite Aid of Pennsylvania, Inc. ("Rite Aid") has filed an action under 42 U.S.C. § 1983 (" § 1983") against Feather O. Houstoun, the Secretary of the Pennsylvania Department of Public Welfare ("Department"). Plaintiff alleges that the Department failed to comply with Title XIX of the Social Security Act ("Medicaid Act"), 42 U.S.C. § 1396 *et seq.*, and accompanying regulations as well as various state statutes and regulations and the Due Process clause of the Fourteenth Amendment. According to Rite Aid, the Department improperly lowered the reimbursement rates for prescription drugs and related services in Pennsylvania's State Plan.

Before the court are the defendant's motion for judgment on the pleadings on all counts of the complaint while plaintiff seeks judgment on the pleadings as to Count II only. When considering these motions, the court accepts all of the opposing party's well-pleaded allegations as true, as well as facts specifically admitted by the opposing party. *See, e.g., Jablonski v. Pan American World Airways. Inc.,* 863 F.2d 289, 290–91 (3d Cir. 1988).

Rite Aid brings three claims against the Department. Count I asserts a right to sue under § 1983 for violations of

§ 1396a(a)(30)(A) and the regulations concerning the medical care advisory committee. Count II alleges violations of three public notice regulations. Count III asserts a Fourteenth Amendment violation.

Rite Aid requests various forms of relief, including a declaration that the Department adopted the amended regulations in violation of 42 U.S.C. § 1396a(a)(30)(A), 42 C.F.R. §§ 440.210, 447.205(a) & (c)(4), 431.12(e), and 55 Pa.Code § 1101.70 (West 1997), as well as in violation of the Fourteenth Amendment of the United States Constitution. In addition, it seeks to enjoin defendant from continuing to use the lower reimbursement rates for calculating payments to Rite Aid for prescription drugs and related services. Rite also asks this court to direct defendant to pay the higher pre-October 1, rates until the new rates are adopted in conformance with federal and state laws and regulations. Finally, it claims attorney's fees and costs.

Medicaid is a cooperative federal-state cost sharing program to finance medical assistance to indigent, elderly and disabled individuals. *See* 42 U.S.C. § 1396 *et seq.* Since Pennsylvania has elected to participate in Medicaid, it must meet federal requirements and submit a State Plan, and any amendments thereto, to the United States Department of Health and Human Services ("HHS") for approval. *See, e.g., Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The Department is responsible for implementing Pennsylvania's State Plan.

The Medicaid Act requires states to pay for certain enumerated services and allows states to provide additional services. § 1396a(a)(10)(A); 42 C.F.R. § 440.210. Because Pennsylvania has opted to include prescription drugs and related services in its State Plan, it has contracted with Rite Aid, among others, to provide these services. *See* 55 Pa.Code § 1121.

It is undisputed that the Department submitted the amended regulations, which are the subject of this lawsuit, to Pennsylvania's Independent Regulatory Review Commission ("IRRC") for approval on August 8, 1995. Defendant did not issue a notice of proposed rulemaking or provide Pennsylvania's medical care advisory committee ("MAAC") with a copy of the regulations before sending them to the IRRC. The Department, however, did publish a notice in the August 26, 1995 *Pennsylvania Bulletin* stating that it "will amend" the regulations effective October 1, 1995. *See* 25 Pa.Bull. at 3540 (Aug. 26, 1995). The regulations were deemed approved by the IRRC on September 8, 1995 and took effect on October 1, 1995. The text of the order of the Department adopting the regulations was published in the *Pennsylvania Bulletin* on September 23, 1995. 25 Pa.Bull. at 3978.

On December 29, 1995, the Department sent the amended State Plan to the Health Care Financing Administration ("HCFA") of HHS for approval. HCFA approved Pennsylvania's revised State Plan with the lower reimbursement rates on May 7, 1996, with the changes effective October 1, 1995.

## I. Enforceability

Defendant first asserts that a private party such as Rite Aid may not seek enforcement of the Medicaid regulations under § 1983, although the defendant apparently concedes that Rite Aid has a right of action to enforce § 1396a(30)(A) itself. (Br. of Def. in Opp'n to Rite Aid of Pa.Mot. for J. on the Pleadings n. 4). Accordingly, defendant moves for judgment on the pleadings on the claim in Count I of the complaint that defendant violated a regulation in not adequately consulting with the medical advisory committee before promulgating the lower reimbursement rates. Defendant has a similar argument as to the claim in Count II that it violated the public notice requirements of the regulations.

Rite Aid is suing under § 1983 to enforce requirements found in 42 C.F.R. § 447.205 and 42 C.F.R. § 431.12(e). These regulations are authorized by § 1396a(a). Section 1983 provides a remedy for deprivation under color of state law of "any rights ... secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

It is well settled that § 1983 encompasses not only Constitutional rights but also some federal laws as well. *See e.g., West Virginia Univ. Hosp. v. Casey,* 885 F.2d 11, 17 (3d Cir.1989), *aff'd* 499 U.S. 83, 111 S.Ct.

1138, 113 L.Ed.2d 68 (1991). The courts use a two part test to determine which federal laws may be enforced under § 1983. First, the federal law must create a private right of action under § 1983. *See Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Second, the federal law must not reflect a Congressional intent to foreclose private enforcement. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

The Court of Appeals for the Third Circuit thoroughly analyzed this question when it held that West Virginia University Hospitals, Inc. had a remedy under § 1983 to enforce the Medicaid regulations implementing § 1396a(a)(13)(A). *West Virginia,* 885 F.2d at 35. It decided that "valid federal regulations as well as federal statutes may create rights enforceable under § 1983." *Id.* at 18. Since the regulations at issue in this case are also authorized by § 1396a, we follow *West Virginia's* analysis and conclusion.

■ The court emphasized that § 1396a(a) contains mandatory language. It commands that a state "must" provide for certain methods and standards when setting payment rates. *West Virginia,* 885 F.2d at 19–20. This statutory language quashes any doubts that State Plans are not subject to federal conditions. *Id.* at 20.

In addition, the Third Circuit rejected arguments that the Medicaid Act only confers rights on Medicaid patients. *Id.* at 21. Section 1396(a)(13)(A) established a plan for adequate hospital reimbursement. Hospitals, as well as Medicaid patients, were intended beneficiaries. "Their [the hospitals'] interests and the interests of medicaid patients are bonded by a common goal, the delivery of adequate health care by hospitals to state medicaid patients and the enjoyment of such care by patients." *Id.* at 20. The Third Circuit joined other courts in allowing hospitals to enforce Medicaid Act violations because patients and hospitals have "parallel" interests. *Id.* at 21. The same holds true for Rite Aid. As a Medicaid provider, Rite Aid has a private right of action to enforce the statute and regulations which mandate adequate reimbursement for prescription drugs and related services.

■ The *West Virginia* court quickly disposed of the second prong of the two part test. Pennsylvania argued that providing an administrative remedy and subjecting the State Plan to HCFA approval meant that Congress intended to foreclose private enforcement of the Medicaid Act. *Id.* at 22. The Third Circuit disagreed. "[T]he existence of a state administrative remedy does not ordinarily foreclose resort to § 1983." *Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 427–28, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Moreover, the possibility that HCFA may suspend or reduce federal payments does not prohibit private enforcement for past violations. *See West Virginia,* 885 F.2d at 22. The second prong of the test is satisfied.

The Department submits that a better view is expressed in *Kansas Hosp. Ass'n v. Whiteman,* 835 F.Supp. 1556 (D.Kan.1993), *aff'd mem. sub nom. Williams v. Whiteman,* 36 F.3d 1106 (10th Cir.1994). While *Kansas Hosp.* held that 42 C.F.R. § 431.12(e) is not privately enforceable, the district court specifically noted that its holding contradicted the Third Circuit's conclusion in *West Virginia.* 835 F.Supp. at n. 37. Whatever the merits of *Kansas Hosp.* may be, we are bound by our Court of Appeals' decision. Rite Aid has a right of action to bring its claims under § 1983.

## II. Count I

### 1. *42 U.S.C. § 1396a(a)(30)(A)*

■ The Department further moves for judgment on the pleadings with respect to Rite Aid's claims in Count I of its complaint under 42 U.S.C. § 1396a(a)(30)(A) ("(30)(A)"). Rite Aid brings both a "procedural" and a "substantive" § 1983 claim under this statutory provision. Under (30)(A)

A State Plan for medical assistance must

provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard

against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A).

In its "procedural" claim, Rite Aid contends that the Department failed to consider "efficiency, economy, and quality of care" as mandated by the statute when setting the new lower reimbursement rates. (Compl. at ¶¶ 25–27). The Department, in its answer, denies this assertion as a "conclusion of law to which no responsive pleading is required," (Answer at ¶¶ 25–27) and counters that no consideration is required under the statute. (Def.Mot. for J. on the Pleadings at 10). We believe that Rite Aid holds the correct position.

■■■■ The statute specifically instructs that the State Plan "must provide such methods and procedures ... to assure that payments are consistent with efficiency, economy, and quality of care...." § 1396a(a)(30)(A). Of course, we must give effect to these and all of the statute's provisions and adhere to the plain meaning of their words. *See, e.g., Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28, 31 (3d Cir.1995); *Appalachian States Low–Level Radioactive Waste Comm'n v. Pena*, 126 F.3d 193 at 198–99 (3d Cir. 1997). While we need not decide at this juncture the nature or extent of the "methods or procedures" to ensure efficiency, economy, and quality of care, it is clear they must be utilized at least to some degree before the Department may implement any revised reimbursement rates. Otherwise, the statutory language would be meaningless.

Other courts agree with our interpretation of (30)(A). When discussing this statute after the Arkansas Department of Human Services (DHS) cut reimbursement rates, the Eighth Circuit held, "DHS must consider the relevant factors of equal access, efficiency, economy, and quality of care as designated in the statute when setting reimbursement rates." *Arkansas Med. Soc'y. Inc. v. Reynolds*, 6 F.3d 519, 530 (8th Cir.1993); *see also Minnesota HomeCare Ass'n, Inc. v. Gomez*, 108 F.3d 917, 918 (8th Cir.1997); *Orthopaedic Hosp. v. Kizer*, No. 90–4209, 1992 WL 345652 at *4 (C.D.Cal. Oct.5, 1992); *Ohio Hosp. Ass'n v. Ohio Dep't of Human Serv.*, 62 Ohio St.3d 97, 579 N.E.2d 695, 699 (Ohio 1991).

*Methodist Hospitals, Inc. v. Sullivan*, 91 F.3d 1026 (7th Cir.1996) is not contrary to these cases, despite the Department's contention. Rejecting plaintiff's call for comprehensive studies before changing the reimbursement rates, the Seventh Circuit held that Indiana's process satisfied (30)(A). *Id.* at 1030. In that case, Indiana chose to lower its rates, evaluate the effect, and readjust the rates to ensure compliance with (30)(A). *Id.* As the court noted, the evaluation was "before-the-fact" as to the final rates. *Id.* Judge Easterbrook emphasized that (30)(A) does not require "comprehensive studies" such "that would put an environmental impact study to shame ..." in advance of every rate modification. *Id.* at 1029. We agree. The Department focuses on one sentence in Judge Easterbrook's opinion, which stated that (30)(A) "requires each State to produce a *result*, not to employ a particular methodology for getting there." This is certainly true. However, by this language, *Methodist* does not conclude that (30)(A) eliminates any mandate for evaluation of the statutory factors before revising the rates. *Methodist*, 91 F.3d at 1030.

The Department's reference to the recently repealed Boren Amendment is also misplaced. The Boren Amendment, which covered reimbursement rates for institutional providers, also contained language concerning efficiency, economy, and quality of care. 42 U.S.C. § 1396a(a)(13)(A). But it required more. The Amendment specifically required states to make "findings" and "assurances" when it changed reimbursement rates. *Id.* Since (30)(A) does not contain a similar "findings" and "assurances" provision, the Department contends that no analysis is required. (Def.Mot. for J. on the Pleadings at 9–11). This negative inference is not warranted. While the Department may not have to re-

port detailed findings and assurances, it still must analyze any proposed revisions to ensure that they comply with the statutory language.

█ We can deal summarily with defendant's motion concerning Rite Aid's "substantive" claim that the revised reimbursement rates are too low to satisfy the statutory requirements. Whether the rates are consistent with efficiency, economy, and quality of care requires further development of the record.

Defendant's motion for judgment on the pleadings concerning plaintiff's procedural and substantive claims under 42 U.S.C. § 1396a(a)(30)(A) concerning the methodology for reaching the new reimbursement rates and concerning the propriety of the rates themselves will be denied.

### 2. Medical Care Advisory Committee

█ In Count I plaintiff also claims defendant failed to consult with MAAC, Pennsylvania's medical care advisory committee. In addition to ensuring the opportunity for public participation in the rate change process, the regulations accompanying the Medicaid Act also require consultation with a medical care advisory committee. See 42 C.F.R. § 431.12(e). According to this regulation, "The committee must have an opportunity for participation in policy development and program administration, including furthering participation of recipient members in agency programs." Id. The Department admits that MAAC did not meet between October 24, 1994 and October 1, 1995. (Compl. at ¶ 24; Answer at ¶ 24). The extent of any consultation cannot be determined at this early stage of the case. Consequently, defendant's motion for judgment on the pleadings with respect to this alleged violation of the regulation will be denied.

### III. Count II: Public Notice

Both defendant and plaintiff have filed motions for judgment on the pleadings for each portion of Count II. In that Count, Rite Aid alleges three distinct violations of the public notice requirements found in 42 C.F.R. § 447.205. First, Rite Aid claims that the

Department did not provide public notice of any "proposed" changes to the rates as required by § 447.205(a). (Compl. at ¶ 17, 20). Second, Rite Aid asserts that the defendant did not publish notice of the change 60 days before the effective date. (Compl. at ¶ 19). According to Rite Aid this violates § 447.205. (Pl.Br. in Opp'n of Def.Mot. for J. on the Pleadings at 22–26). Third, Rite Aid contends that the content of the Department's notice was deficient. (Compl. at §§ 21–23).

█ The Department, at the outset, asserts that HCFA's approval of the amended State Plan is sufficient to support its motion on all aspects of Count II. Defendant's view is misplaced. Agency approval of the Plan will not absolve the Department if the facts reveal that defendant did not comply with the regulations. Although courts grant deference to an agency's interpretation of its own regulations, we retain the ability and duty to apply the law. See, e.g., St. Margaret Memorial Hosp. v. NLRB, 991 F.2d 1146, 1154 (3d Cir.1993); Mississippi Hosp. Ass'n. Inc. v. Heckler, 701 F.2d 511, 520–21 (5th Cir.1983). Given the record in this case, we cannot rely solely on HCFA's approval of the amended plan to decide that the Department, or HCFA, complied with the law.

### 1. Publication of the "Proposed" Change

Rite Aid alleges that while the Department published a public notice of changes to the regulations, it did not do so for any "proposed" change. According to Rite Aid, the Department only provided public notice of the final change to the regulations prior to the October 1, 1995 effective date. (Compl. at ¶ 20). The regulations clearly require notice of any "proposed" change. Section 447.205(a) states that "the agency must provide public notice of any significant proposed change in its methods and standards for setting payment rates."

█ Defendant contends that its notice of August 26, 1995, satisfied this requirement. See 25 Pa.Bull. at 3540. This notice stated that the Department "will amend" the reimbursement rates and provided a brief synopsis of the changes. Id. Defendant argues that the regulations were still "proposed" on August 26, 1995, since they were not deemed

adopted by Pennsylvania's Independent Regulatory Review Commission ("IRRC") until September 8, 1995. (Br. of Def. in Opp'n to Rite Aid of Pa.Mot. for J. on the Pleadings at 3). Rite Aid counters that the regulations were final because the agency closed its public comment period, completed its review, and submitted the regulations to the IRRC as "final-form" regulations. If they were final, Rite–Aid claims the notice does not satisfy § 447.205(a).

The IRRC was created by the Regulatory Review Act of 1982. *See* Pa.Stat.Ann. tit. 71 § 745.1. The Act itself sets forth the legislative intent. It states in relevant part:

> The General Assembly finds that it must provide a procedure for oversight and review of regulations adopted pursuant to this delegation of legislative power to curtail excessive regulations and to establish a system of accountability so that the bureaucracy must justify its use of the regulatory authority before imposing hidden costs upon the economy of Pennsylvania. It is the intent of this act to establish a method for continuing and effective review, accountability and oversight. It is the further intent of this act to provide for primary review by a commission with sufficient authority, expertise, independence and time to perform that responsibility. It is the further intent of this act to provide ultimate review by the General Assembly of those regulations.

*Id.* at § 745.2. The IRRC has the authority to approve or disapprove any regulation subject to the right of the General Assembly to overrule it. *Id.* at §§ 745.5–745.7. In addition, the Governor has the right to veto any General Assembly resolution. *Id* . at § 745.7(d).

In carrying out its duties, the IRRC may hold "public hearings." *Id.* at 745.11. Moreover, it "shall act as a clearinghouse for complaints, comments and other input from members of the General Assembly and from the public regarding regulations, proposed regulations and administrative procedures." *Id.* at § 745.12.

Neither party provides support for its definition of "proposed." Theoretically, a regulation could be proposed any time before its effective date. Defendant argues it is proposed pending final approval by the various Commonwealth entities as required by law. Rite Aid asserts the regulation is no longer proposed once the Department closes its public comment period and submits the regulation for further approval. We need not decide the outer boundaries of what may constitute a "proposed" regulation. We conclude that a "proposed" change under the federal regulations means, at the very least, any change that is still subject to approval or disapproval by any state agency before it can become effective. On August 26, 1995, when the notice of a change was published, the IRRC, which is open to public comment, had yet to pass upon and approve the amended regulation. This publication clearly was not the last step in the regulatory process before implementation.

The August 26, 1995 publication gave notice of a "proposed change," satisfying the requirement of § 447.205(a). We will grant defendant's motion for judgment on the pleadings.

### 2. *Public Comment Period*

Each side moves for judgment on the pleadings in connection with Rite Aid's claim concerning the length of the public comment period. The federal regulations require that the notice "must ... [b]e published before the proposed effective date of the change." § 447.205(d)(1). Rite Aid argues that the Department's failure to provide 60 days of public comment before changing the reimbursement rates violated Pennsylvania regulations found in 55 Pa .Code § 1101.70 (West 1997). (Compl. at § 19; Answer at § 19). It provides:

> Federal regulations at 42 C.F.R. 447.205 require the Department ... to give a 60 day public notice of proposed Statewide changes in any method or level of MA [Medical Assistance] reimbursement that would affect program expenditures by 1% or more during the 12 months following the effective date of the change.

55 Pa.Code § 1101.70. Since the notice in question was published on August 26, 1995, it was not published 60 days before the October

1, 1995 effective date. Thus, the Department apparently did not conform to its own state regulation. The question, however, is whether federal regulations require a notice period of that length. We conclude that the Department's procedures satisfied the federal regulations.

 There has not been a federally required 60 day comment period for this type of proposed change since 1981. *See* 46 Fed. Reg. 58677 (Dec. 3, 1981). "[W]e [HCFA] have eliminated the mandatory length of the comment period. The final regulations require that the notice be published before the proposed effective date of the change ." *Id.* at 58680. Consequently, federal law only mandates publication of the notice *before* the changes go into effect. Several cases have held that publication one day prior to the rate change is acceptable. *See, e.g., Oklahoma v. Shalala,* 42 F.3d 595, 604 (10th Cir.1994); *Illinois v. Shalala,* 4 F.3d 514, 515 (7th Cir.1993); *North Carolina Dep't of Human Resources v. United States Dep't of Health & Human Serv.,* 999 F.2d 767, 769 (4th Cir.1993).

Rite Aid argues that the court should incorporate Pennsylvania law into § 447.205(d) since HCFA focused on states having "their own procedures in effect that allow for public participation," and giving states the "flexibility to respond timely to both legislative and fiscal mandates. . . ." *See* 46 Fed.Reg. at 58678–79. If the agency intended to incorporate the state time period into the federal public notice requirement, however, we believe it would have done so explicitly. *See, e.g., Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); *Geis v. Board of Educ.,* 774 F.2d 575, 580–81 (3d Cir.1985). Absent a clear intent to incorporate state law, this claim is barred by the Eleventh Amendment which prohibits federal courts from ordering state officials to conform to state law. *See, e.g., Pennhurst State Sch. & Hosp.,* 451 U.S. at 17; *Allegheny County Sanitary Auth. v. EPA,* 732 F.2d 1167, 1173–74 (3d Cir.1984). We will grant defendant's motion for judgment on the pleadings and deny plaintiff's motion with respect to this claim.

### 3. *Public Notice Content*

 Defendant and plaintiff both move for judgment on the pleadings with respect to the requirements in § 447.205(c) concerning the content of the public notice. Among other requirements, § 447.205(c)(4) states that each notice must "[i]dentify a local agency in each county . . . where copies of the proposed changes are available for public review." Rite Aid contends, and we agree, that the Department did not satisfy this requirement. The August 26, 1995 notice announced that "[a] copy of this notice is available for review at local county assistance offices throughout the Commonwealth." 25 Pa.Bull. at 3540. Notifying readers about another location where they can read the same notice is not sufficient. We will grant Rite Aid's motion and enter a declaratory judgment that the Department violated § 447.205(c). Defendant's motion will be denied.

### IV. Count III: Fourteenth Amendment

Finally, we address defendant's motion for judgment on the pleadings concerning Rite Aid's Due Process claim set forth in Count III of the complaint. Rite Aid alleges that the Department violated its Fourteenth Amendment rights by depriving it of a property interest without due process of law and without just compensation. We must first decide whether or not Rite Aid has a constitutionally protected property interest. *See, e.g., Reich v. Beharry,* 883 F.2d 239, 242 (3d Cir.1989).

 Rite Aid broadly declares that public contracts which may be terminated only for cause create a constitutionally protected property right. Even assuming *arguendo* that Rite Aid's contract is not terminable at will, plaintiff misreads the case law. As we recently stated, "We do not read *Loudermill,* or the Third Circuit's decisions such as *Unger* and *Reich,* as holding that commercial contracts terminable only for cause automatically implicate the Fourteenth Amendment." *Vartan v. Nix,* 980 F.Supp. 138 at 141 (E.D.Pa.1997). Only those public contracts involving "extreme dependence" or "permanence" give rise to a protected status. *Id.* at 140–41. While Rite Aid's business in-

volves the welfare of indigent and disabled patients, this commercial contract between the Commonwealth and a nationwide corporation does not involve the "extreme dependence" necessary to support a due process claim. *See Id.* at 140–41.

A plaintiff needs "more than a unilateral expectation ... [the plaintiff] must, instead, have a legitimate claim of entitlement" to those benefits to establish a protected property interest. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *see also, Ritter v. Cohen,* 797 F.2d 119, 122 (3d Cir.1986). Rite Aid argues that it has a legitimate expectation of continued participation in the Medicaid Program because it only can be terminated for cause. The Department counters that it may terminate Rite Aid for the "convenience or best interest of the Department" with a 30 day notice. *See* 55 Pa.Code. § 1101.77(b)(1). In *Ritter,* the Third Circuit questioned, but did not decide, whether § 1101.77(b)(1) contains an independent right to terminate without cause, or whether it is tied to § 1101.77(a) which lists the grounds for terminating a provider. 797 F.2d 119 at 122.

We need not determine whether the Department may terminate Rite Aid without cause or whether Rite Aid has a legitimate expectation of continued participation in the Medicaid program. These issues are immaterial because plaintiff has not been denied this benefit. The Department has not terminated Rite Aid's status as a Medicaid provider, and Rite Aid may continue to participate in the Medicaid program.

Rite Aid makes an innovative, but misguided, argument that its contract with the Department is, "in effect," a license. Although Rite Aid correctly asserts that a license may create a protected property interest, Rite Aid provides no support for its assertion that this contract is a license. *See, e.g., LARA, Inc. v. South Whitehall Twp.,* 729 F.Supp. 415, 419 (E.D.Pa.1989).

Rite Aid also declares that its participation is not voluntary since it could not leave the program without giving a 30 day notice. *See Ritter,* 797 F.2d at 122. This argument is unpersuasive. The notice requirement does not transform Rite Aid's choice to be a provider into mandatory participation in the Medicaid program. Rite Aid retains the option to remain in the program and receive the new rates or cease being a provider. In any case, since Rite Aid had over 30 days between the initial notice of August 26, 1995 and the effective date of October 1, 1995, it was never forced to accept the lower rates. Accordingly, we find that Rite Aid does not have a protected property interest, and we will grant the Department's motion for judgment on the pleadings on Rite Aid's constitutional claim.

## V. Conclusion

For the reasons set forth in the accompanying memorandum, Rite Aid has the right to seek enforcement of its claims against the Department. However, we will grant the Department's motion for judgment on the pleadings on Count II of plaintiff's complaint with respect to the alleged failure to publish notice of "proposed" changes to the reimbursement rates and with respect to the alleged violation of any 60 day public comment period, and as to Count III alleging a violation of the Fourteenth Amendment. We will grant Rite Aid's cross-motion for judgment on the pleadings for the remaining portion of Count II concerning the content of the public notice, and we will enter a declaratory judgment stating that the Department violated the requirements of 42 C.F.R. § 447.205(c)(4) when it promulgated these regulations. In all other respects, the motions will be denied.

The nature and extent of future proceedings, as well as of any remedies to be provided, are matters for another day.

### *ORDER*

AND NOW, this 3rd day of November, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant Feather O. Houstoun for judgment on the pleadings is GRANTED as to Count II of plaintiff's complaint with respect to the claim that there was no notice of any "proposed" change to the reimbursement rate and with respect to

the claim that notice of a 60 day public comment period requirement was not given;

(2) the motion of defendant for judgment on the pleadings is GRANTED as to Count III alleging violation of the Fourteenth Amendment of the United States Constitution;

(3) the motion of defendant for judgment on the pleadings is DENIED in all other respects;

(4) the motion of plaintiff Rite Aid of Pennsylvania, Inc. for judgment on the pleadings is GRANTED as to the claim of Count II concerning the content of the public notice. The court declares that the defendant violated 42 C.F.R. § 447.205(c)(4) in failing to identify a local agency in each county where the proposed changes were available for public review; and

(5) the motion of plaintiff for judgment on the pleadings is DENIED in all other respects.